CUBA GRAPEFRUIT CO., INC., PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 7954, 15828, 16487.   Promulgated February 19, 1927.

Cash value of property paid in to petitioner in September, 1914, for stock determined for invested capital purposes.

*Virgil Y. Moore, Esq.,* and *Andrew T. Smith, Esq.,* for the petitioner.

*L. C. Mitchell, Esq.,* for the respondent.

In proceeding Docket No. 7954 the Commissioner determined deficiencies in income and profits taxes of $18,657.90 and $972.22 for the fiscal years ending June 30, 1918 and 1919, respectively; in proceeding Docket No. 15828 he determined a deficiency of $5,576.83 for the fiscal year ending June 30, 1920; and in proceeding Docket No. 16487 he determined deficiencies of $113.26 and $2,106.05 for the fiscal years ending June 30, 1921 and 1922, respectively.

The question involved concerns the actual cash value of about 930 acres of land at Cabellos, Cuba, together with buildings, machinery and equipment, when paid in to a New York corporation for stock on November 16, 1914. The Commissioner fixed the value for all the properties at $52,500. The petitioner claims that the properties had an actual cash value of $708,375.

## FINDINGS OF FACT.

Petitioner is a New York corporation engaged in business of growing and selling citrous fruit. For several years prior to 1914 the Fisk Fruit Co. and the Development Co. of Cuba, corporations, owned together about 930 acres of land at Cabellos, Cuba, on 800 acres of which there was an orange and grapefruit orchard and 30 acres in lemons. There were about 100 acres of bare land. The orchards were planted in 1902 and 1905. The Development Co. of Cuba managed and operated the entire property. The Fisk Fruit Co. and the Development Co. of Cuba also owned, in connection with the orange and grapefruit grove, a packing house and packing machinery and equipment, a four-room office building, a manager's residence, 24 laborers' houses, tractors and farm implements, stables, 58 mules, blacksmith shops, storehouses, pump houses, watering system, and a 900 foot railroad sidetrack. These buildings and the machinery and equipment were constructed and acquired in 1910 and were in good condition in 1914. In November, 1914, petitioner was organized and the entire properties of the two corporations mentioned were paid in to petitioner in exchange for 3,500 no par value shares of its stock, since which time petitioner has owned, operated, and managed the properties. Petitioner's operation of the properties has been profitable from the start.

The trees on this property had reached full-bearing maturity in November, 1914, and the orchards were the largest in the Republic of Cuba. There were a number of smaller orchards in and near Cabellos and at other points in Cuba. Petitioner's property was located between 250 and 300 miles from Havana. A railroad which connects with the Cuba Railroad a short distance from Cabellos runs through this property. From this railroad the predecessor companies had constructed a switch line for use in loading and shipping its fruit. Two-thirds of the 800 acres of land contained orange trees and one-third grapefruit trees.

In 1914, 513 acres of the orange and grapefruit orchards contained 153,900 exceptionally fine, well-developed, and healthy trees. The remaining 287 acres contained mature-bearing trees, but due to lack of proper care and cultivation these trees were not as fully developed and therefore were not as productive as trees of the better grade orchards, and a few trees were missing from this tract. However, with proper care and treatment the trees on this acreage were capable of soon being brought to full productivity and this was done by the petitioner. There always has been and still is a ready

and profitable market in the Republic of Cuba for all oranges produced there.  Some of the grapefruit was sold in Cuba.  In 1914 and subsequent years petitioner sold and shipped grapefruit into the United States at a profit, notwithstanding the high tariff.  Thirty acres of the property acquired by the petitioner produced French lemons for which the market in Cuba was not as good as for oranges and grapefruit, due to the preference of the inhabitants of the Republic for limes.

Shortly after the property was acquired petitioner abandoned the lemon orchard.  The original cost of the 800 acres of land containing the better grade of orange and grapefruit trees, the expense of clearing and preparing the same and of planting and caring for the trees thereon to maturity, of seven years, was not less than $822,110.  In addition, there were included in the property acquired by petitioner 100 acres of uncultivated pasture land which had theretofore a cost of $100 an acre.  This does not include the cost of machinery and equipment, or any of the other items of the property mentioned, which was not less than $45,000.

The sales price of other small orchards, ranging from 10 to 90 acres, in the vicinity of petitioner's property which compared favorably to the best orchards owned by petitioner prior to and subsequent to 1914 was $1,200 an acre.  The sales price of orchards which might be compared to the 287 acres of petitioner's property on which the trees were not as well cared for ranged from $250 to $600 an acre.

The actual cash value of all the property paid in to petitioner for its stock on November 16, 1914, was $708,375.

OPINION.

LITTLETON: In the opinion of the Board, the evidence submitted fully justifies a cash value of $708,375 claimed by petitioner for the properties paid in to it for stock in November, 1914.  The evidence consists of testimony of three witnesses who were thoroughly familiar with these properties and were experienced in the operation of orange and grapefruit orchards in Cuba.  They were fully qualified to express their opinion of the cash value of the properties.  One of the witnesses has been engaged in managing and caring for the properties involved since 1908.  Another witness is and has been for a number of years the owner of an orchard near that of petitioner and is familiar with the values of such properties.  The third witness is the vice president and a director of the petitioner and has been engaged in buying and selling citrous fruit produced in Cuba for twenty-six years.  During this time he has spent a great deal of his time in Cuba, and is thoroughly familiar with this industry and with the value of citrous fruit properties in that Republic.  He has

been especially familiar with petitioner's properties for several years. These witnesses explained in detail the facts and circumstances upon which they based their opinions.

In addition to the facts stated, it is shown that the orange and grapefruit orchards on this property were capable of producing at the date of purchase, and in fact subsequently did produce, net earnings of at least $90 per acre per year.

These witnesses placed a conservative cash value in November, 1914, upon the properties acquired by petitioner, as follows:

| | |
|---|---:|
| 513 acres first-class grove, $1,200 an acre | $615,600 |
| 287 acres slightly deficient grove, $250 an acre | 96,750 |
| 100 acres of bare land, and 30 acres of lemon trees, $100 an acre | 13,000 |
| 58 mules, $250 each | 14,500 |
| Packing house | 10,000 |
| Machinery and equipment | 3,000 |
| Manager's house | 6,000 |
| 24 laborers' houses | 5,000 |
| Field equipment, tools, etc | 7,000 |
| Railroad | 3,000 |
| Total | 773,850 |

Petitioner claims a cash value of only $708,375, and we are of opinion from consideration of all the evidence that the facts fully sustain the cash value claimed by the petitioner for the properties on November 16, 1914.

The amount of $708,375 should therefore be used as the basis for computing the petitioner's invested capital for the taxable years.

> *Judgment will be entered on 15 days' notice, under Rule 50.*